## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ELLYN D. BRANNICK | : | Civil Action No. 06-356 (FLW) |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STATE OF NEW JERSEY, VICINAGE 13, AMY | : | |
| O'CONNOR, J.S.C., ALICIA LEARN, ANGELA | : | |
| PARDO AND RACHEL MOREJON, | : | |
| | : | |
| Defendants. | : | |

**WOLFSON, District Judge**

      Presently before the Court is a Motion to Dismiss or, in the Alternative, for Summary

Judgment by Defendants, the State of New Jersey, Vicinage 13, the Honorable Amy O'Connor,

J.S.C., Alicia Learn, Angela Pardo and Rachel Morejon ("Defendants").  Defendants contend that

Plaintiff's Complaint, which is related to her divorce action in New Jersey Superior Court,  is

barred for numerous reasons including the statute of limitations, collateral estoppel, the Eleventh

Amendment, and Judicial Immunity.  The Court has considered the moving, opposition and reply

briefs, and for the reasons stated in the opinion below, I find that Plaintiff's Complaint is time-

barred and I will grant Defendants' Motion for Summary Judgment.

**I. Background**

In August 2002, Plaintiff, Ellyn D. Brannick ("Brannick"), a litigant in a divorce action in the Superior Court of New Jersey, was scheduled to appear in court for various proceedings related to her divorce trial.  In accordance with Judiciary policy, Brannick notified the court that she required ADA accommodation to appear.  Certification of Angela Pardo ("Pardo Cert."), ex. A.  Specifically, Brannick informed the court that she had a Chemical Sensitivity or Petrochemical Hypersensitivity disability and requested that the court provide an environment free from toxins, that no chemicals or scented products be used to clean the courtroom, that she be provided with a natural wood or metal chair for her use, that no pesticides could be used or construction work be performed in areas adjoining the courtroom for at least two weeks prior to all trial days and, on the days when she was to appear in court, that no one would be permitted to wear scented products or carry tobacco or smoke fumes on their person or clothing.  Certification of Angela Pardo ("Pardo Cert."), ex. A.

As a facility whose courtrooms are open to the public, the court could not "dictate the habits" of people in attendance, however, the court was able to accommodate Brannick's request for a controlled environment by enabling her to participate in the proceedings via video conference.  Id., ex. D.  Indeed, the Judiciary went to significant lengths to accommodate Brannick.  For example, the court set aside Jury Deliberation Room #1 in the Warren County Courthouse because it contained no carpets, wall coverings or window treatments.  Id.  Further, the court instructed the that this room was not to be cleaned with any chemicals or scented products for a week prior to Brannick's appearance in court.  Id.  Moreover, Judge O'Connor, the judge presiding over Brannick's divorce trial, switched courtrooms with another judge in order to

2

utilize a courtroom with video-conferencing capabilities.  Certification of Alicia Learn ("Learn Cert."), ex. A.  The vicinage provided these accommodations to Brannick for the duration of her trial which occurred over an eighteen day period between December 2002 and March 2003.

One of the issues litigated during the trial was Brannick's alleged disability.  Specifically, Brannick contended that as a result of her chemical sensitivity, she was unable to work and that she was therefore entitled to receive alimony from her ex-husband.  Brannick's husband disputed these contentions and the issue was litigated before Judge O'Connor.  After an 18 day trial that included testimony from five experts and a private investigator, Judge O'Connor determined that Plaintiff did not have a disability that prevented her from working.  Specifically, on October 20, 2003, Judge O'Connor held: "In sum, the Court is finding that the wife was clearly trying to defraud the Court into giving her alimony based on a non-existing disability.  I do not believe or accept that she has any affliction which prevents her from being in public or from working." Certification of Judge Amy O'Connor ("O'Connor Cert"), ex. A, Tr. 32:20-24.  In reaching this decision, Judge O'Connor considered the credibility of the witnesses as well as evidence of Brannick's lifestyle and activities and found many inconsistencies.  For example, although testimony indicated that Brannick was allegedly allergic to numerous substances including synthetic materials, petroleum products, food products, fossil fuels, perfumes, foam, dust, trees, pollen, mold, synthetic carpet, vinyl, and acrylic, id. at Tr. 4-12, Brannick conceded that she heated her home with wood and coal, id. at Tr. 6:25-7:5, that she sold antiques at an indoor flea market with other vendors, id. at Tr. 7:15-21, and that she worked as a manager for a new home construction site during the divorce trial.  Id. at Tr. 8:3-6.

Thereafter, on November 17, 2003, in an unrelated proceeding, Plaintiff was awarded

3

disability through the Social Security Administration as a result of her chemical sensitivity.  On

November 26, 2003, Judge O'Connor's decision was reduced to a final judgment. Subsequently,

Brannick and her ex-husband had several court appearances pertaining to enforcement of the

court's orders in the divorce proceedings.  These proceedings took place on November 14, 2003,

November 24, 2003, December 5, 2003, January 16, 2003, February 13, 2004, March 29, 2004

and February 1, 2006.  O'Connor Cert. ¶ 8.  Indeed, at the December 5, 2003 hearing, Judge

O'Connor advised Brannick in open court that the Vicinage would no longer provide her with

any accommodations for her alleged disability.  O'Connor Cert. ¶ 8.  Nor were any

accommodations provided in subsequent court proceedings.  Plaintiff filed the instant Complaint

on January 25, 2006.

## II. Legal Standard

Under Rule 12(b), a court may grant a motion to dismiss for failure to state a claim if,

"accepting all well-pleaded allegations in the complaint as true, and viewing them in the light

most favorable to the plaintiff, plaintiff is not entitled to relief." Oatway v. Am. Int'l Group, Inc.,

325 F.3d 184, 187 (3d Cir.2003) (citations omitted).  The Court need not, however, credit a

plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d

902, 906 (3d Cir.1997). The focus of the Court's Rule 12(b) analysis "is not whether a plaintiff

will ultimately prevail but whether he or she is entitled to offer evidence to support the claims."

Oatway, 325 F.3d at 187.

When a party styles its motion as a motion to dismiss under Rule 12(b)(6), or in the

alternative, for summary judgment under Rule 56, and attaches material outside the pleadings to

its motion papers, a court "has the discretion to accept the extraneous material and convert the

motion into one for summary judgment." Gunson v. James, 364 F.Supp.2d 455, 460-61

(D.N.J.2005); see also Fed.R.Civ.P. 12(b). However, a court may consider documents that are

"integral to or explicitly relied upon in the complaint" without converting a motion to dismiss

into a motion for summary judgment. In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280,

287 (3d Cir.1999) (emphasis omitted).  Any further expansion beyond the pleading, however,

may require conversion of the motion into one for summary judgment. Fed. R. Civ. P. 12(b).

"[A] court may consider an undisputedly authentic document that a defendant attaches as an

exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a

plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to

attach a dispositive document on which it relied." Pension Benefit Guaranty Corp. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993). Consideration of these referenced

documents will not require the conversion of a motion to dismiss to one for summary judgment

under Fed. R. Civ. P. 12(b)(6). "The reason that a court must convert a motion to dismiss to a

summary judgment motion if it considers extraneous evidence submitted by the defense is to

afford the plaintiff an opportunity to respond. When a complaint relies on a document, however,

the plaintiff obviously is on notice of the contents of the document, and the need for a chance to

refute evidence is greatly diminished." Id. at 1196-97.  Even if a "[c]omplaint does not explicitly

refer to or cite [a document]. . . the critical [issue] is whether the claims in the complaint are

'based' on an extrinsic document and not merely whether the extrinsic document was explicitly

cited." Burlington Coat, 114 F.3d at 1426 (emphasis in original) (citation omitted).

5

In the instant matter, Defendants attach numerous exhibits to its Brief including Certifications from Judge O'Connor, Angela Pardo and Alicia Learn and this Court could not decide the Motion without these Certifications.  Moreover, Defendants framed their motion as a Motion to Dismiss, or in the Alternative, as a Motion for Summary Judgment.  Thus, Plaintiff was on notice that this Court could convert the instant Motion to Dismiss into a Motion for Summary Judgment.  See Koger v. Kaplan, Inc., 169 Fed.Appx. 682, 685 (3d Cir. 2006)(holding that "the District Court committed no reversible error in considering evidence outside of the pleadings as the District Court only did so in the context of consideration of a motion for summary judgment and only after the parties had been notified of the conversion-a clearly permissible course of action.").   For these reasons,  the Court will consider Defendants' Motion to Dismiss as a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir.2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party.  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir.2002). The Court's function "at the summary judgment stage. . .is not. . .to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported

allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Id., 477 U.S. at 252.

**III. Discussion**

In the instant matter, Defendants contend that Plaintiff's Complaint should be dismissed for numerous reasons including the statute of limitations, collateral estoppel, the eleventh amendment and judicial immunity.  However,  because I find that Plaintiff's claims are time-barred, the Court will focus its opinion on the statute of limitations and will not reach any other issues raised by the Defendants.

Title II of the ADA provides that qualified disabled persons shall not "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Because the ADA does not contain a statute of limitations, courts apply the most appropriate or analogous state statute of limitations. See Goodman v. Lukens Steel Co., 482 U.S. 656, 660 (1987); Burkhart v. Widener University, Inc., 70 Fed. Appx. 52 (3d Cir. 2003).  Claims under Title II of the ADA are governed by the state statute of limitations for personal injury claims.  Smith v. City of Philadelphia, 345 F.Supp. 2d 482, 485 (citing Freed v. Consolidated Rail Corp., 201 F.3d 188 (3d Cir. 2000))("Claims under Title II of the Americans with Disabilities Act...are governed by the state statute of limitations for personal injury claims").  In New Jersey, personal injury claims are subject to a two year statute of limitations.  N.J.S.A. 2A:14-2.  Therefore, to state a valid claim under Title II of the ADA, plaintiffs must meet the two

7

year statute of limitations or their claims will be time-barred.

Similarly, claims under NJLAD are also subject to a two year statute of limitations. Montells v. Haynes, 133 N.J. 282 (1993); see also Ali v. Rutgers, 166 N.J. 280 (2000) (finding that all NJLAD claims whose operative facts arise after the Montells decision would be subject to a two year statute of limitations).   Thus, Plaintiff's NJLAD claims must also be filed within the applicable two year period.

Statutes of limitation begin to run upon the "accrual" of a cause of action. Ali, 166 N.J. at 286.  A cause of action accrues upon the occurrence of a wrongful act resulting in injury for which the law provides a remedy. Beauchamp v. Amedio, 164 N.J. 111, 116 (2000). Generally, the date of accrual will be the date on which the incident or negligent act occurred. Id.  In other words, a cause of action accrues when an injured party knows or should have known that she has a basis for an actionable claim.  Lopez v. Swyer, 62 N.J. 267, 272 (1973).

Here, Plaintiff alleges that "since December of 2003 the [New Jersey Superior Court] has specifically refused to make accommodation. . . despite requests being submitted complete with doctors letters indicating the accommodations required and despite documentation of disability." Pl's Complaint ¶ 9.  Moreover, Plaintiff alleges that because of Judge O'Connor's ruling denying further accommodation, she has "been accused of being untruthful, a fraud, put in jail, had her business destroyed, threatened, hospitalized, forced to seek the help of emergency room and more as a result of Defendants [sic] unlawful and discriminatory actions."  Id. ¶ 13.

In light of these allegations, Defendants argue that Plaintiff's cause of action arose, at the latest, on December 5, 2003, the date on which Judge O'Connor informed Brannick, in open court, that the Vicinage would no longer provide her with any accommodations for her alleged

8

disability.  O'Connor Cert. ¶ 8.  Therefore, because Plaintiff did not file this lawsuit until January 25, 2006, her complaint falls outside the two year statute of limitations and is time-barred. The Court agrees.

To begin, Plaintiff admits that she was "verbally informed on December 5, 2003 by Judge O'Connor that she was ordering that no further disability accommodation be provided."  Pl's Opp. Br. at Point 3.   Thus, Plaintiff knew that she had an actionable claim as of that date. However, Plaintiff contends that although she was informed on December 5, 2003 that the court would no longer accommodate her, she did not suffer an actual injury until her next court appearance.  Although there is little merit to this argument, it deserves no further review other than to note that Plaintiff's next court appearance was on January 16, 2004, O'Connor Cert. ¶ 8. Thus, even if the accrual date was January 16, 2004, Plaintiff filed her Complaint on January 25, 2006 and is therefore time-barred.

In addition, Plaintiff contends that the statute of limitations has not run because she has a continuing cause of action.  In other words, Plaintiff argues that she acquired a cause of action every time an accommodation was not made by the court.  The Court does not agree.

The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995).  Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred."  Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991). However, to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is

9

"more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Indeed, the Third Circuit has adopted the following three part test to determine whether the continuing violation doctrine applies: (1) whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) whether the acts are recurring or more in the nature of isolated incidents; and (3) whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. Cowell v. Palmer Tp., 263 F.3d 286, 292 (3d Cir. 2001) ( citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)).   Consideration of the "degree of permanence" is the most important of the factors.  See Berry, 715 F.2d at 981.

      As applied to this matter, Plaintiff cannot show that her harm is the result of a continuing violation.  Even if Plaintiff could satisfy the first two prongs of the continuing violation test, Plaintiff could not satisfy the third prong, i.e. the degree of permanence.  Indeed, as noted above, Plaintiff admits that on December 5, 2003, Judge O'Connor informed her, in open court, that no further accommodation would be provided based on her alleged chemical sensitivity.  Pl's Br. at Point Three.  Thus, under the Third Circuit's test, Judge O'Connor's pronouncement should have triggered an awareness of, and duty to, assert her rights.  Moreover, even if Judge O'Connor's pronouncement could somehow be construed as a non-action, Plaintiff attended a hearing on January 16, 2004 and no accommodation was made for her at that time.  Thus, I find that Plaintiff's Complaint is time-barred and I will grant Defendants' Motion for Summary Judgment.

10

**III. CONCLUSION**

For the reasons discussed herein, Defendants' Motion for Summary Judgment is

GRANTED and this case will be closed.  An appropriate order will follow.


Dated: October 30, 2006                              /s/ Freda L. Wolfson
                                                     Honorable Freda L. Wolfson
                                                     United States District Judge

11